Joyce BANKS, et al., Plaintiffs,

v.

**BOARD OF EDUCATION OF the CITY OF PEORIA, SCHOOL DISTRICT NO. 150, County Clerk of Peoria County, and the Peoria Election Commission, Defendants.**

Joyce BANKS, et al., Plaintiffs,

v.

**CITY OF PEORIA, ILLINOIS, and the Peoria Election Commission, Defendants.**

Joyce BANKS, et al., Plaintiffs,

v.

**PLEASURE DRIVEWAY AND PARK DISTRICT OF PEORIA (misnamed as Greater Peoria Park District), County Clerk of Peoria County, the Peoria Election Commission, and the State of Illinois, Defendants.**

Nos. 87–1017 to 87–1019.

United States District Court, C.D. Illinois.

March 18, 1987.

James E. Craven, Springfield, Ill., William L. Robinson, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., for plaintiffs in all cases.

Phillip Lenzini, Kavanagh, Scully, Sudow, White & Frederick, Peoria, Ill., for Dist. 150 (Case No. 87–1017) and Peoria Park Dist. (Case No. 87–1019).

Frederick G. Hoffman, Thomas, Hinshaw, Culbertson, Peoria, Ill., for Dist. 150 (Case No. 87–1017).

Robert Day, Day & Day, Peoria, Ill., for Peoria Election Com'n in all cases.

Timothy J. Cassidy, Cassidy & Mueller, Peoria, Ill., for intervenor (himself) in Peoria Park Dist. Case No. 87–1019.

Donna Dagnall, Asst. Atty. Gen., Springfield, Ill., Dianna Dentino-Zimmerman,

Asst. Atty. Gen., Peoria, Ill., for State of Ill. (Case No. 87–1019).

Erik Margolis, Roy G. Davis, Keck, Mahin & Cate, Peoria, Ill., Jim Casey, Keck, Mahin & Cate, Chicago, Ill., for the City of Peoria (Case No. 87–1018).

## MEMORANDUM OPINION

MIHM, District Judge.

This is a class action in which the Plaintiffs, all black citizens registered or eligible to register to vote who reside within the geographic boundaries of the three Defendant political subdivisions, allege that the election procedures for the Peoria Board of Education (School District No. 150), Pleasure Driveway and Park District of Peoria, and the City of Peoria, violate § 2 of the Voting Rights Act of 1965, as amended June 29, 1982, 42 U.S.C. § 1973. The Plaintiffs allege that the at-large method of electing some or all of the representatives of these public bodies results in a denial or abridgement of the Plaintiffs' right to vote on account of race or color in violation of § 2, because the election system has the effect of diluting their vote in Peoria elections.

The individual Plaintiffs representing the class are Joyce Banks, Girtha Gulley, Oscar Penn, Robert Grubbs, Stan Maclin, and Hiram Walker. The Defendants in Case No. 87–1017 are the Board of Education of the City of Peoria, School District No. 150 (Board of Education), the Peoria Election Commission, and the Peoria County Clerk. The Defendant in Case No. 87–1018 is the City of Peoria, Illinois. The Defendants in Case No. 87–1019 are Pleasure Driveway and Park District of Peoria (Peoria Park District), the Peoria Election Commission, the Peoria County Clerk, and the State of Illinois. The Court has also allowed Timothy Cassidy, a candidate in the April 7, 1987 election for the Park District Board of Trustees, to intervene as a matter of right in Case No. 87–1019.

The Plaintiffs filed these cases on January 30, 1987, asking that the Court find that the present methods for electing representatives for the Peoria Park District, Board of Education, and City of Peoria violate § 2 of the Voting Rights Act because of the effects which the at-large system of electing representatives has upon the voting rights of the black population voting for these public officials. The Plaintiffs seek declaratory and injunctive relief, requesting that the Court adopt and place into effect an electoral structure which would provide for the election of the members of the Defendant public bodies from single-member districts.

The Court has jurisdiction to consider the Plaintiff's claims under 28 U.S.C. § 1331, because these claims raise a federal question arising under the laws of the United States. In addition, 28 U.S.C. § 1343(3) and (4) specifically grants district courts original jurisdiction of civil actions to redress the deprivation of rights secured by an act of Congress providing for equal rights of all persons within the United States and to protect civil rights, including the right to vote.

On March 10, 1987, the Plaintiffs filed a Motion for Preliminary Injunction, seeking to enjoin the Defendants in each of the three cases before the Court from holding the April 7, 1987 election as scheduled. On March 11, the Plaintiffs filed a Consolidated Memorandum of Law in Support of their Motion for a Preliminary Injunction, including exhibits and other documentary evidence. The Court set this case for a hearing on the Preliminary Injunction request on March 24, 25, and 26, 1987.

The Defendants in each of the cases responded to the Plaintiffs' Motion for Preliminary Injunction with their own legal memoranda in opposition. In addition, the Intervenor in the Park District case filed a Motion to Dismiss the Plaintiffs' request for an injunction of the April 7, 1987 election on the grounds that the election was imminent and the Petition was untimely filed. The Court believes it is appropriate to view the Defendants' memoranda as raising a Motion to Dismiss the request for injunctive relief on the grounds of untimeliness. Furthermore, because of the similarity of all three of these cases with regard to the issue of timeliness, the Court orders

that these cases are consolidated for purposes of this Motion to Dismiss and the Court's ruling in this opinion. In this opinion and order, the Court will address this narrow issue of timeliness raised in the Defendants' and Intervenor's memoranda.

Before proceeding to the issue of the timeliness of the request for preliminary injunction, some discussion of the procedural posture of this case is necessary. The Plaintiffs filed their Complaint in these three separate cases on January 30, 1987. The Complaints sought declaratory and injunctive relief for the respective Defendants' violation of § 2 of the Voting Rights Act. The Complaint alleges that the cases were properly brought as class actions under Federal Rule of Civil Procedure 23 for a class action seeking declaratory and injunctive relief with respect to the class as a whole.

On February 20, 1987, the Board of Education and the Peoria Park District filed Motions to Dismiss in their respective cases for failure of the Plaintiffs to join the Peoria County Clerk and the State of Illinois as indispensable parties in the lawsuits. In their Motions to Dismiss, the Peoria Park District and the Board of Education argued that the absence of these Defendants would prevent the Court from granting the Plaintiffs the complete relief requested and subject the other Defendants to a substantial risk of incurring inconsistent obligations, due to the State laws in effect governing the elections in school board districts and park districts.

On March 5, 1987, the Court granted leave to the Plaintiffs to file a Second Amended Complaint in the Park District and Board of Education cases which added the County Clerk of Peoria County as an additional Defendant. The Court believed the Amended Complaint was appropriate because the Peoria County Clerk is the election authority under Illinois law for election precincts within the Park District and Board of Education lying outside the City of Peoria. On March 6, 1987, after hearing oral argument on the other Motions, the Court ordered the Plaintiffs to join the State of Illinois as an additional

party in the Park District case, 87–1019, pursuant to Rule 19, and denied the Board of Education's Motion to Dismiss for failure to join the State of Illinois as an indispensable party. The Court based these rulings upon its interpretation of the legal authority (or lack of it) of the Park District and the Board of Education to make changes in the manner in which their voting districts for the election of their board members are determined pursuant to the laws of the State of Illinois.

On February 20, 1987, the Peoria Election Commission filed a Motion to Dismiss in each of the cases. The Peoria Election Commission argued that it has a statutory duty to conduct elections within the City of Peoria in accordance with state law or the order of any court of competent jurisdiction, and, accordingly, it would be bound by any decision of this Court even if it were not a party Defendant in these lawsuits. The Court held oral argument on this Motion and denied the Motion to Dismiss the Peoria Election Commission as a Defendant.

On February 23, 1987, Timothy Cassidy filed a Motion to Intervene pursuant to Rule 24(a), the Peoria Park District case, 87–1019. He informed the Court that he had followed the proper statutory procedures for obtaining a place on the April 7, 1987 ballot for the election of Park District Trustees, and he argued that he had a right to intervene because any decision of the Court involving the April 7, 1987 election would affect his interests in a direct, substantial way, different from the interests of the public in general. The Court heard oral argument on the Motion to Intervene on March 5, 1987, and granted the Motion. At that time, the Intervenor filed his Motion to Dismiss the Plaintiffs' request for an injunction of the April 7, 1987 election of Trustees to the Peoria Park Board on the grounds that the election was imminent and the Plaintiffs' Complaint was untimely with regard to the April 7, 1987 election.

The Plaintiffs, on March 4, 1987, filed a Motion in each of these three cases for certification of a class pursuant to Federal Rule of Civil Procedure 23. The Plaintiffs

requested that the Court certify the lawsuits as class actions under Rule 23(b)(1) and (b)(2) consisting of all black citizens of the United States registered or eligible to register to vote who reside within the geographic confines of the respective districts of the Peoria Park District, Peoria Board of Education, and City of Peoria. The Defendants opposed the class certification, arguing that the Plaintiffs had not met their burden of showing a politically cohesive and geographically insular minority as required for a class under the Voting Rights Act. They also added that the class representatives could not show that they have the same interests and have suffered the same injury as all of the class members they purport to represent.

The Court held oral argument on the Motion for Class Certification on March 13, 1987 and made oral findings on the record certifying each case as a class action as requested by the Plaintiffs. Because of the differences in the geographic boundaries of the three Defendant Districts, the classes certified by the Court necessarily also vary somewhat, depending upon residency within the geographic territory of the Defendant Districts.

At that same hearing on March 13, 1987, the Court had before it the Plaintiffs' Memorandum of Law in Support of Preliminary Injunction Motion, the Defendants' Memoranda in Opposition to the Motion for Preliminary Injunction, the Plaintiffs' Reply Memorandum to the Defendants' Opposition, the Intervenor's Motion to Dismiss, and the Plaintiffs' Memorandum in Opposition to the Intervenor's Motion to Dismiss. The Court had set aside the days of March 24, 25, and 26, to hold a hearing on the Plaintiffs' request to enjoin the April 7, 1987 elections for members of the Board of Education, Park District Board, and City Council. At the hearing on March 13, however, the Court questioned the parties about the legal issues raised in the aforementioned documents regarding the Preliminary Injunction, and the Court and the parties were in agreement that the Court should address the issue of the timeliness of the request for Preliminary Injunction, if possible, while the parties were before the Court on that date.

After reviewing the documents submitted by the parties, the Court decided it was appropriate to address the timeliness issue as a legal matter, based upon the Court's understanding of the matter and the parties' representations that there would be no need to present additional evidence on this issue. A decision on the timeliness question, since it was capable of being made at that time, would expedite the process and provide, at the earliest time, a decision on one of the major issues involved in the prayer for preliminary injunction. Therefore, the Court informed the parties at the hearing on March 13, 1987, that it would read the Defendants' Memoranda in Opposition to the Request for a Preliminary Injunction as raising Motions to Dismiss based upon the untimeliness of the request. The Court gave the parties the opportunity to orally argue the issue of timeliness. The Court held that the Plaintiffs' request to enjoin the April 7, 1987 election was dismissed, because, as a matter of law, such relief would be inappropriate due to the lateness in filing the request and the harm to the public. This opinion supplements the oral findings and decision the Court made on the record at the March 13, 1987 hearing.

In petitioning a court for a preliminary injunction, a plaintiff bears the burden of establishing the following five elements: (1) that it has no adequate remedy at law; (2) that it will suffer irreparable harm if the preliminary injunction is not issued; (3) that the irreparable harm it will suffer if the preliminary injunction is not granted is greater than the irreparable harm the defendant will suffer if the injunction is granted; (4) that it has a reasonable likelihood of prevailing on the merits; and (5) that the injunction will not harm the public interest. *Brunswick Corp. v. Jones,* 784 F.2d 271, 273–74 (7th Cir.1986). In deciding this issue of timeliness prior to holding an evidentiary hearing on the preliminary injunction motion, the Court does not mean to ignore or exaggerate the importance of *any* of these five elements necessary for a preliminary injunction. However, because

the issue of timeliness is presented by the parties as a legal issue which the Court must resolve in deciding whether to use its equity powers to issue a preliminary injunction, the Court believes it is appropriate to resolve this matter prior to the scheduled hearing on March 24–26.

■ The Plaintiffs filed their Complaint on January 30, 1987. The Court takes judicial notice of the fact that by the time the Plaintiffs filed their Complaints in these cases, the deadlines for filing nominating petitions to obtain a place on the ballot for the April 7 election had already passed. Ill.Rev.Stat., Ch. 46, § 10–6 (1985). The deadline for filing a statement of economic interest, as required by the Illinois Constitution, had also passed prior to the date the Plaintiffs filed their Complaints. Ill. Const. 1970, Art. 13, § 2. Shortly after the deadlines for filing the nominating petitions had passed, the respective election authorities held lotteries to determine ballot positions in the upcoming April 7, 1987 election. In addition, the absentee balloting process for the April 7 election began on February 26, 1987, Ill.Rev.Stat., Ch. 46, Art. 19 (1985), and absentee voting is presently under way.

The filing of the request to block the April 7, 1987 election has placed the candidates in an impossible position. At the time that the Complaints in these cases were filed in January, the election was just over two months away, and the candidates had already begun campaigning, forming committees to raise funds and campaign, making decisions about political strategy, and spending money for publicity purposes. As the election draws nearer, the candidates must assume that the election will go forward and step up their efforts accordingly, even though the filing of the request for preliminary injunction raised a significant question about whether this Court would allow the April 7 election to proceed.

The issues raised in these voting rights cases are complex and require the Court to review a great deal of social and demographic statistical evidence. If the Court is to make a reasoned decision on the request for preliminary injunction, the Court must allow the parties the opportunity to gather and evaluate this type of evidence. Nevertheless, the more time the Court gives the parties to prepare for a preliminary injunction hearing, the more imminent becomes the election, which increases the difficulties placed on the candidates participating in the election, the public officials administering the election, and the public, who are in the process of gathering information about the candidates and issues involved in the April 7 election.

Other courts which have been faced with a similar situation regarding an upcoming election have denied requests for injunctive relief that would cancel or postpone the election. In *Dillard v. Crenshaw County*, 640 F.Supp. 1347 (M.D.Ala.1986), the court refused to enjoin pending elections for county officials even though the plaintiffs had shown a substantial likelihood of prevailing in their claim under § 2 of the Voting Rights Act against the at-large system used to elect county commissioners. The court explained that it would not order the county to implement new election plans and to postpone any upcoming elections until after the lawsuit had been finally heard on the merits. The court noted that the plaintiffs' request for preliminary injunctive relief was not filed until February, 1986, and that they only produced all of the evidence necessary to consider the motion in March, less than three months before the primary elections scheduled for June. The court explained that it would not order the county to adopt single-member district plans in time for the June elections because the court did not believe that such a remedy would necessarily be appropriate for all of the counties. The court stated that it would be unfair and unfeasible to require the counties to implement such plans by June. The court added:

"Many of the considerations leading the court to refuse to order immediate implementation of new plans also lead it to refuse to postpone the scheduled elections. Moreover, without having alternative election plans ready to be implemented immediately, the Court is unwilling to enjoin the scheduled elections. Numer-

ous unforeseen events could delay the implementation of alternative plans, ranging from disagreement over where district lines should be drawn to failure to get approval from the Department of Justice.... The court does not wish to be left in the position of having either to extend the terms of incumbents or to appoint temporary replacements to serve until the new plans are in place. Both alternatives would effectively deny the entire electorate the right to vote and thus seem to offend the basic principles of representative government." *Id.* at 1362–63.

Even though the court refused to enjoin the scheduled elections, the court found that the plaintiffs had met their burden of proving the elements of a preliminary injunction and ordered the counties to submit a time schedule for developing new election plans, pending the court's trial on the merits.

Similarly, in *Knox v. Milwaukee County Board of Elections Commissioners*, 581 F.Supp. 399 (E.D.Wis.1984), the court refused to enjoin elections in Milwaukee County. The plaintiffs alleged that the reapportionment plan adjusting Milwaukee County supervisor district boundaries diluted black and hispanic voting strength in violation of § 2 of the Voting Rights Act of 1965, as amended, and 42 U.S.C. § 1983, for deprivations of rights secured under the Fourteenth and Fifteenth Amendments to the United States Constitution. The court held that it was denying the plaintiffs' request for a preliminary injunction on the grounds that the request was inexcusably delayed and barred by the equitable doctrine of laches. The court explained that the request for preliminary relief was filed just seven weeks before the primary election, and just one working day before all nomination papers were to be filed for that election. The court also noted that the plaintiffs' request came 31 months after the approval of the tentative proposal for apportionment and 22 months after the adoption of the final apportionment plan. *Id.* at 404. On the basis of these facts, the court concluded that the plaintiffs had shown a lack of diligence in

asserting their claim and had asserted it in a most untimely fashion, and that the defendants would be prejudiced if the upcoming elections were enjoined. *Id.* at 408.

The Fourth Circuit Court of Appeals, in two cases, refused to enjoin an upcoming, imminent election. In *Simkins v. Gressette*, 631 F.2d 287 (4th Cir.1980), the Fourth Circuit affirmed the decision of a district judge to deny the plaintiffs' request for a three-judge district court which could order a temporary restraining order to block the filing period for candidates seeking nomination through the primaries for the South Carolina State Senate. The Court of Appeals held that the plaintiffs had not alleged sufficient facts to raise a substantial claim requiring the convening of a three-judge district court to have the Senate reapportionment plan declared unconstitutional. *Id.* at 295. The court also held in the alternative that the plaintiffs' delay in filing suit foreclosed a grant of any equitable relief. The court explained that the plaintiffs had waited until two days before the opening of the filing period to bring suit, and even though the court expedited the matter as best as possible, the court was unable to hold a hearing until only five and one-half weeks remained before the primary elections. The court found that the record did not reflect any reason for the plaintiffs' delay in waiting until the eve of the 1980 election before bringing suit, and concluded that such a delayed suit would clearly cause a major disruption in the election process of South Carolina. The court found that the disruption which an injunction would cause, coupled with the fact that a new national census would be taken that year which would likely require apportionment in South Carolina, justified the court's denial of the request for equitable relief, without the need for considering the merits of the plaintiffs' constitutional claim. *Id.* at 295–96.

In *Maryland Citizens for a Representative General Assembly v. Governor of Maryland*, 429 F.2d 606 (4th Cir.1970), relied upon in *Simkins*, the Fourth Circuit also affirmed the refusal of a district court

judge to convene a three-judge district court to address a claim of unconstitutional apportionment in Maryland's General Assembly. The Fourth Circuit in *Maryland Citizens* held that the district court had acted properly in dismissing the request for the three-judge court because, as a matter of law, injunctive relief would not be available to restrain election officials from conducting upcoming elections. *Id.* at 608. The court indicated that the plaintiffs had filed their complaint in April of 1970, only 13 weeks prior to the filing deadline for office seekers, and that the primary elections were to be held in September and the general elections in November. The court explained that the development of a new reapportionment plan by the General Assembly or the court could not possibly take place until a few weeks before the July deadline for filing of candidates: "Such a result would necessarily impose great disruption upon potential candidates, the electorate, and the elective process." *Id.* at 610. Therefore, the Fourth Circuit affirmed the district court's dismissal of the request for injunctive relief.

Both of these cases involve challenges to an apportionment plan rather than the method for electing public officials, and the *Maryland Citizens* case involved a request for an injunction, not necessarily a preliminary injunction. Nevertheless, the Court does not believe that these differences make the teachings of these cases inapplicable to the situation presently before the Court.

This Court need not cite every existing case in which a court refused to enjoin an upcoming election based upon equitable considerations in order to show that there exists a well-established line of authority for refusing to block an election in a situation such as the one presently before the Court. As the Supreme Court stated in *Reynolds v. Simms*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), a case challenging the apportionment of districts for state legislators:

"[U]nder certain circumstances, such as where an impending election is imminent and a State election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree." *Id.* at 585, 84 S.Ct. at 1393.

*See, also Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (Supreme Court refused to grant relief to a political party seeking placement on an election ballot because of the pending election, the difficulty for the state in providing another set of ballots, and the possible confusion among voters, especially absentee voters); *Dobson v. Mayor and City Council of Baltimore City*, 330 F.Supp. 1290 (D.Md. 1971) (court refused to enjoin city council elections on the grounds that a civil rights suit challenging a redistricting ordinance was not filed until ten days after the candidates' filing date and two months before the primary).

In the present case, the Plaintiffs filed this suit less than ten weeks before the April 7, 1987 election, and they did not make clear their intent to request a preliminary injunction of the April 7 election until sometime a month later than that. The Plaintiffs have argued that despite the time frame under which this case has proceeded, § 2 of the Voting Rights Act makes it clear that an election system which dilutes the voting rights of minorities is unlawful and must be corrected. The Plaintiffs take the position that if they can show a reasonable likelihood of success on the merits of their Voting Rights Act claim and meet other traditional elements for injunctive relief, the Court should enjoin the April 7, 1987

election, despite the imminence of that election, because to do otherwise would place the Court in the position of countenancing an illegal election. The Court does not agree with that conclusion.

Even though Congress, in amending the Voting Rights Act in 1982, made it clear that any voting system which had the effect or result of diluting the voting rights of minorities was unlawful and must be done away with, that law did not set aside the well-established requirements which must be met before a court can grant preliminary injunctive relief. In the context of the present case, this means that not only must the Plaintiffs establish that they have a reasonable likelihood of success on their voting rights claim, but they must also show that a preliminary injunction would not be against the public interest and that the balancing of the hardships weighs in favor of the Plaintiffs and not the Defendants.

As noted earlier by the Court in this opinion, the Defendants and the Intervenor have opposed the Plaintiffs' request for a preliminary injunction on numerous grounds, including both factual and legal bases. In order to read the Defendants' submissions as a Motion to Dismiss the request for Preliminary Injunction, the Court must assume that the Plaintiffs, if a hearing were held, would be able to prove that they had a reasonable likelihood of proving their case on the merits. Success in meeting this standard, however, is not the same as proving by a preponderance of the evidence that the Defendants have violated the Voting Rights Act. Thus, the Plaintiffs' argument that this Court has the authority and the duty to remedy violations of § 2 of the Voting Rights Act by not allowing elections to proceed under an illegal system is misdirected. Prior to the April 7 election, the Court will not be in a position to make a final ruling on the merits of the case and will not be able to decide whether the Defendants violated the Voting Rights Act. The most the Court could possibly determine at a hearing on the preliminary injunction is that the Plaintiffs can show a *reasonable likelihood of success* on the merits of their Voting Rights Act claim.

Assuming that the Plaintiffs would be able to meet "the reasonable likelihood of success" standard, the Court holds, nevertheless, as a matter of law, that equitable relief in the form of an injunction against the April 7 election for members of the Board of Education, Park District Board, and City Council is not available because such a request was not made in a timely manner and it would not be in the public interest to enjoin the election. Congress amended the Voting Rights Act in 1982, and it is under this amended section that the Plaintiffs bring their claim. The Plaintiffs have not given any reason why they could not have filed this claim earlier, other than indicating to the Court that they were encouraged to bring this lawsuit by the success of the Plaintiffs in the case of *McNeil v. City of Springfield, Illinois*, 658 F.Supp. 1015 (C.D.Ill.1987). While the Court certainly can understand the Plaintiffs' desire to bring this lawsuit after the success of the Plaintiffs in the Springfield case, the Court deems such a reason is not sufficient to balance the hardship which would result if the Court were to grant the Plaintiffs' request for preliminary injunctive relief on such short notice.

The Court believes that the request for preliminary injunctive relief must be denied on the grounds of untimeliness, because the mechanism for holding an election on April 7, 1987 is already substantially in place and candidates have proceeded with their campaigns since the January filing deadlines as if an election were going to occur on April 7. The filing of this lawsuit has already thrown much uncertainty into the administration and participation in the April 7 elections. If the Court were to give the Plaintiffs the opportunity to support their request for a preliminary injunction with an evidentiary hearing, a decision as to whether the April 7 elections could go forward or not would be put off until less than two weeks before the date of the election. In the meantime, the officials in charge of administering the election and the candidates involved would be left in a state of limbo, forced to go forward with

their efforts out of necessity, but not knowing until the last minute whether those efforts would be all for naught should the Court decide to enjoin the election. In the same vein, the voters would be left uncertain as to the status of the election. The Court cannot overlook the wide range of equities of this situation in order to focus on the possible merit of the Plaintiffs' Complaint.

Furthermore, the Court does not believe it would be in the public interest to enjoin the April 7 election, because enjoining the election would result in harm to the voting rights of all citizens of Peoria. The Plaintiffs argue that candidates and voters alike do not have a right to participate in an unlawful system of elections. Assuming, however, that the Plaintiffs could show a reasonable likelihood of success in proving their voting rights claim prior to the April 7 election, the Court would not be in a position to remedy this possible violation until it had made a decision after a complete trial on the merits and had the opportunity to consider possible forms of relief. Thus, if the Court were to enjoin the April 7 election, the Court would necessarily have to extend the terms of the present office holders until after a trial is held (and, if Plaintiffs prevailed at the trial, until after implementing a new election system). In the meantime, the black voters of Peoria would be no better off because they would still be represented by the public officials currently in office, elected under the system they claim is illegal. On the other hand, enjoining the April 7 election would have the effect of preventing all of the voters in the respective election districts from exercising their right to vote and elect new representatives this year. Moreover, if the Court were to find that the Plaintiffs did not prove their voting rights claim at trial, the Court would have to either order a special election to replace the enjoined April 7 election or allow the present candidates to remain in office an even greater length of time. While none of these alternatives presents a perfect solution to the problem facing the Court, the Court believes that the best answer is to allow the election of April 7 to go forward

so that the public officials whose terms are due to expire can be replaced and so that the election procedures, already substantially in place, will not be disrupted or made useless.

The Plaintiffs argue that elected officials who have been elected under an unlawful system have no right to be office holders, and candidates do not have a right to compete in unlawful elections. This presupposes that the election system currently in place for members of the Park District Board, Board of Education, and City Council are in violation of the Voting Rights Act. As this Court has already mentioned, the most that the Plaintiffs could prove prior to the April 7 election would be that they would *likely* prevail in a trial on the merits of their voting rights claim. Because this element of uncertainty would exist even if the Court were to hear evidence on the Plaintiffs' request for preliminary injunction, the Court decides that it is a better practice to go ahead with the election procedures already in place to replace the office holders whose terms will expire. If, after a trial on the merits, the Court decides that the election system in place violates the Voting Rights Act, the Court can decide how to deal with the people who have been elected to these offices at that time.

The Plaintiffs have also suggested that this Court's refusal to enjoin the April 7 election will send a signal to the class members that their civil rights must take a back seat to the rights of the candidates on the ballots for the April 7 election and the legal structure already in place. The Court does not by this decision intend to send out any such signal; the only signal which the Court wishes to convey with this decision is that the prayer for injunctive relief seeking to block the April 7 election is not timely. This decision is not meant to be any indication of the Court's ruling on the merits of the underlying voting rights claim, because the Court has not even considered the merits of the claim.

The proper focus of this decision is upon the balancing of the equities in which a court must engage in deciding a request

for a preliminary injunction, as well as the public interest which is affected by such a remedy. The *right of a person to vote for his or her representatives in government, and to have that vote count the same as everyone else's vote, is a foundation upon which all the other rights and liberties of this country are based.* The Court must treat any allegations that such rights are being violated *very* seriously. But in its eagerness to make sure that one group's voting rights are not being violated, the Court must also be cautious not to unnecessarily upset the established election process. In this case, granting a preliminary injunction against the April 7, 1987 election, regardless of the merits of the Plaintiffs' Complaint, would not serve the public interest because it would disrupt an election process already well advanced toward election day and deprive all of the citizens of the respective voting districts of their right to replace public officials whose terms will be expiring soon.

## ORDER

Without addressing the merits of the Plaintiffs' request under § 2 of the Voting Rights Act for preliminary injunctive relief against the April 7, 1987 election to elect members to the Peoria Park District, Board of Education, and Peoria City Council, the Court holds, as a matter of law, that such an injunction is not appropriate on the grounds of the untimeliness of the request and that it would not be in the public interest. The Court orders that these three cases are consolidated for purposes of this order, and the Court GRANTS the Defendants' and Intervenor's Motion to Dismiss the Plaintiffs' Request for a Preliminary Injunction against the April 7, 1987 election.

Further, after oral Motion by the Plaintiffs made on March 16, 1987, the Court orders that the Plaintiffs' Motion for Reconsideration is DENIED.